We are ready for oral argument in our last case, Cooper v. Smithfield. Ms. Gray, you are first. Good morning. Thank you, Your Honor. May it please the Court? My name is Angela Gray, as you already know, and I represent Ms. Cooper in this appeal from the Eastern District of North Carolina regarding her employment case, and it's basically a sexual harassment case, and I'm sure the facts have been presented well to the Court. My purpose today is to generally argue some of the points that I believe that are most substantial as it pertains to the lower court's ruling in this matter. I have allotted five minutes of my time to the United States Equal Employment Opportunity Commission, which will be argued by Attorney Starr, Susan Starr, and I have reserved some rebuttal time. I'm going to be arguing mostly this morning regarding the primary reasons I believe the district court erred in its dismissal of several of the individual claims under Rule 12b-6 and ultimately made a dispositive ruling pursuant to Rule 56 regarding the sexual harassment complaint. I think the lower court's decision stems largely from its discussion of the relationship between Ms. Cooper and the alleged sexual harasser, Mr. Tommy Lowry, and in that context, the Court initially started off their argument that Mr. Lowry was in fact not Ms. Cooper's supervisor and in fact was a co-worker of Ms. Cooper and basically developed this opinion around that proposition. I think that this case is unique in the sense that you have an individual, Mr. Lowry that is, who purported to be Ms. Cooper's supervisor, whom Ms. Cooper believed to be his supervisor and whom he believed he had supervisory authority over Ms. Cooper. According to the employer, he didn't, but I think for purposes of Rule 56, it becomes an issue of fact. It creates an issue of fact as to whether he did. I'm sorry, though, isn't the High Court's opinion in Vance, in the first instance, as much as a court can, decided more as a matter of law and leave it as only a matter of last resort to the trier of fact and Vance highlights very important factors that are not present here, like hiring and firing authority and things of that nature. We don't have any record that Mr. Lowry had that kind of authority over Ms. Cooper, do we? We do not. What we do have is, I believe, in the best case scenario, an apparent authority argument in that Mr. Lowry did have the opportunity and the responsibility of recommending and making recommendations and hiring and firing recommendations. Did he make any, did he have responsibility for any, were any actual employment decisions as the law defines it, hiring, discipline, promotion, were any such actions taken against Ms. Cooper? No. He did not take any of those types of actions. She did talk in her case about asking for a transfer to another department, that she mentioned this to, she made this request to Lowry at some point during her employment and he denied her request for transfer. So I believe that is in the facts of this case. Now that denial certainly to me, if you have the authority to transfer or not transfer, would also go to the apparent authority conversation because his response to her at the time that she made the request was to deny it. So that's given some evidence that he at least had the type of decision, whether it was a termination, hiring, dismissal, demotion type authority, there are no facts in this case to support that. If you look at it from the perspective of the co-worker, I think you do have facts that are sufficient to establish facts that could impute liability to the employer on the co-worker argument because the court decided to not consider the affidavit, the declaration I should say, of Ms. Cooper wherein she indicated in April of 2011, she spoke to someone in Human Resources about the sexual harassment that she had been subjected to by Lowry. Did you make that argument in your opening brief? I did not make that argument in my opening brief. So is it not waived under our court's precedent? Well, I don't think it's waived because what we did talk about was the other motions in the case, which the 12B6 motions and the to strike. No, but I'm talking specifically the court's decision to exclude Ms. Cooper's affidavit as a sham affidavit. That is a separate independent ruling. We applied the law of Celotex to Ms. Cooper's affidavit. Questionable whether it was proper application for sure, but isn't our precedent, because the EEOC raises it, but under our precedent an amici cannot in general terms, there's some very narrow exceptions, but can't preserve the arguments that it's your responsibility to make. So don't we have a waiver problem? Well, here's our position. The pleadings in this case were amended two, three times, and certain allegations were stricken from those pleadings, and we argued in the opening brief that these facts should not have been stricken from the pleadings, and granted this was part of the affidavit that was given in response to summary judgment. So it wasn't considered necessarily in the pleading stage of it. So the sham affidavit argument comes only into play in the context of the motion for summary judgment, and our position is that in raising the issue of whether the court erred in denying the motion for summary judgment, that that argument is encompassed in the claim that the court erred in denying the motion for summary judgment. But I guess, though, along the lines of the complaint allegations, she stated, I believe, at several points in the record, it's in the deposition transcripts, that she did not report Lowry's misconduct until the day before her resignation. And Celotex is, the case law, the summary judgment case law is very clear that a party cannot create an issue of disputed facts through its own internal inconsistencies. So the fact that she was inconsistent doesn't create a dispute of material fact for summary judgment purposes. Well, I have to defer also to what was written in the EEOC's brief, because it's very similar to my comment to that. And it's simply, in the context of a deposition, the witness, as I'm sure you're all aware, is responding to questions that are being asked at that time. She was terminated, or she gave her resignation in July of 2011. And at some point, you know, years went by before her deposition was taken. What about the interrogatory response? So she was asked to describe and identify, and I'm paraphrasing here, each and every instance in which she made a report to her employer, and the only instance she identified in the interrogatory response was the July 2011 report. That wasn't a circumstance where she didn't have time to reflect. She had plenty of time to decide and explain her position. And her position then was that this was the sole instance of reporting. That's a problem. Well, I can see where you would say that that was problematic. All I can say is that her recollection changed over time, and I think that in the context of this case, when she complained to Human Resources, or how she complained to Human Resources may have been different. The other odd thing about this case is that, having said that, I'm going to contradict myself and suggest to you that in your complaint, I think the earliest version of your complaint, there's an unplead allegation in there that says that she reported this incident in April of 2011. So the problem is, your client's all over the place with respect to this, and it's very difficult for us to pinpoint exactly what she said, when she said it, and who she said it to. Can I interject as well and just follow up on that? Because I want to make sure that we do what we're supposed to do as a reviewing court on summary judgment, which is to give your client, the plaintiff, every benefit of the doubt. We'll get it in the light most favorable to her. So I agree with my colleague that I believe you did plead that April 2011 meeting through the fourth amended complaint. I found the allegation there. The other place I found at least some factual corroboration was in Brandon Moore's declaration. But the defendant raises this point that while the declaration may have been authored before the close of discovery, like your own client's affidavit, it was submitted after the close of discovery. One, is that true? And two, is there evidence of that in the record? Because in my view, again, considering it in the light most favorable to Ms. Cooper, Mr. Moore's affidavit may provide the corroboration of that claim in the fourth amended complaint. Your Honor, in response to that, I will say that Mr. Moore was identified as a witness who had knowledge and information about Ms. Cooper's allegations of sexual harassment. And he was identified in the initial disclosures and in the discovery. Frequently what happens in response to a motion for summary judgment is obviously you prepare declarations for witnesses who, at whatever point in time, are able to sign those to me in response to a motion for summary judgment. So I think Brandon Moore's declaration was specifically done for the purpose of responding to a motion for summary judgment. And not necessarily in any other way. So I cannot recall as I stand here without looking back at the appendix when that affidavit was submitted to me. But I know that in the context of this case, it would have been important to me to have his affidavit or his declaration to respond to a motion for summary judgment. And I think if Smithfield wanted to include any testimony or evidence by him in the course of this case, they had access to him as a witness because he was an employee of Smithfield. So I don't think that there was any irregularity with regard to submitting his affidavit or his declaration in response to a motion for summary judgment. Thank you. You have run out of time. I see. You have reserved time for rebuttal. Thank you. Ms. Starr? May it please the Court. My name is Susan Starr and I represent the Equal Employment Opportunity Commission. And I would just kind of like to start off with where you left off. In terms of Moore's declaration, I do think it's important to note that the district court did not consider it at all. It didn't dismiss it because it was brought up too late. It just ignored it. And on that point, one thing I found troubling, and I know this whole question of the sham affidavit is discretion and whatnot, but it seemed that in part for the district court, it turned on when the affidavit was submitted after the close of discovery. Couldn't the district court have lodged the same criticism of Jamie Pope's affidavit, for example? Exactly. Submitted September 1, well beyond the close of discovery, yet cited liberally by the district court. Right, Your Honor. And again, this is on summary judgment. So we think there's enough here to create a genuine issue of fact despite the I'm sorry. But the Leaving aside Jamie Pope's affidavit, the dispute, as best I can tell, just comes down to when Cooper reported the misconduct. And the only dispute, the dispute, even if you leave out both, if you leave out Pope, you still just have the dispute that's created by Cooper's own inconsistent declaration. Well, she made the interrogatory, and then she had the, there's the declaration, and then there's the deposition testimony. And in the deposition testimony, she was never asked, she was asked a lot about the July 2011 time that she went to HR. She wasn't asked, is this the only time? In her interrogatories, she indicated that she did not report the misconduct. I'm just trying, the problem with the dispute is the dispute about the dates comes primarily from her. And Moore's declaration. Right. And that was why, which was not considered, and because Pope's, if Pope's, and I don't recall this, but his declaration was after, also after, you can take that out as well. I'm just looking at what remains of when she reported the misconduct. So I, the only other evidence that I'm aware of is her deposition testimony. And part of that, in addition to her not being asked about any other time, she talks about how after she complained in April, that the harassment got worse and Lowry threatened to kill her if she reported again. Right. And the record is what it is. So, right, Your Honor. And to dial back just a little bit, the Commission's main interest in here has to do with the relationship between a officer courts going through a series of orders, knocking out a lot of factual allegations supporting sexual harassment claim. And it seems to be based on a misunderstanding of that relationship and also a misunderstanding of facts relevant to a sexual harassment claim. As this Court said in Jones v. Calvert Group, the operative regulation for determining the contents of a charge is 1601.12b. And in that it says that a charge satisfies administrative prerequisites if it, quote, is sufficiently precise to identify the parties and to describe generally the action or practices complained of. I'll let you get to this point because I know it's an important one for the Department. But if we conclude that the reporting, that this sham affidavit doctrine in fact applies given these facts, does any of this matter? Well, in terms of, there's an argument here of supervisory liability. That if the Court finds that there's no evidence of the record or a dispute of material fact as to the April 11th meeting, that significantly undermines the negligence argument and whether or not the knowledge was imputed to the employer. But in terms of, the Commission strongly believes that the way the Court went about this is highly problematic and to start at the beginning, the Court should still address what is, what's the relationship between a charge and a complaint and that it just has to be a general description of the claim. It does not, the Supreme Court in Shell Oil says that you don't have to go into detail. This Court in Jones v. Calvert said to describe generally the action or practices complained of. The purpose of a charge is simply a kickoff. The purpose is to alert the defendant of a claim generally. Often these people are not represented by counsel. And so you're just to begin a discussion and for EEOC ultimately to begin to investigate to start to unearth what really took place in the case. The District Court, I'm sorry. Well, no, it's just your time is expiring. Do you want to, can you sum up? Can I sum up? Okay. Quid pro quo or hostile work environment are theories, legal theories. They are not claims. This was not a quid pro quo case because it was an unfulfilled threat. And the idea that if somebody doesn't complain at some point in time, they all of a sudden lose their Title VII rights is counterintuitive. It goes against this Court's direct statement. I think the point, or at least as I took it, the point is the employer has to have some time to respond. I don't think that, or at least that's how I took it. I didn't take it as imposing an artificial. Yes, the Court did rule that, and there's not an argument from EEOC about that. The Court said that she waited so long because it went on for four years and that at some point she basically lost her Title VII rights. Okay. Yeah. Thank you. Yes. And certainly that turns Title VII on its head. And this Court in Fairbrook Medical Clinic said that when an individual successfully performs their job despite this horrific environment and stays there, that that inures to the plaintiff's benefit, not to the harasser's. Thank you very much for your time. Thank you, Joan, for the clarification. Mr. Larkin? Good morning. If it may please the Court, I'm Kurt Larkin, and I represent the appellant, Smithfield Farmland. There are several points that I would like to make today, and I also would like to respond to some of the points raised by Ms. Gray and the EEOC. I begin with this, though. On the surface, there are a lot of moving parts to this appeal, but at its heart, and Ms. Gray herself noted this moments ago, this is a sex harassment case. The sum total of Ms. Cooper's allegations in this case are that she was harassed by a male coworker, Tommy Lowery, and her employer didn't do enough to stop it. That's what this case is about, nothing else. She had her opportunity to prove that allegation, and she did. Now, the EEOC has weighed in, as amicus, primarily to challenge the district court's dismissal of allegations from Ms. Cooper's complaint for lack of subject matter jurisdiction. And I know they raised a few other arguments, but as Ms. Starr said, that's the primary thrust of their argument. Our first response to that is that you shouldn't let their arguments muddy the clear waters of this case. You don't need to address that issue to decide this appeal, because its resolution has no impact on Judge Fox's decision to grant summary judgment. Can I drill down with you a little bit on the affidavit problem? Sure. As I see it. Would you agree that the district court did consider Jamie Pope's affidavit, which was signed after the close of discovery, but did not use it as a ground to not consider Ms. Cooper's affidavit because it was submitted after discovery? And you make the argument we shouldn't consider, or it was proper not to consider Mr. Moore's affidavit because it was submitted after the close of discovery. Yes. Isn't that inherently, on a motion for summary judgment, when it should be construed in the light most favorable to the plaintiff, a discretionary call that's highly problematic? No, Your Honor. It's not problematic at all, and here's why. Let me address Jamie's affidavit first. Ms. Cooper did not serve discovery requests on Smithfield. We identified Mr. Pope as a person in our 26 disclosures likely to have knowledge relevant to the case. Ms. Cooper chose not to take his deposition. We were not under any obligation under the civil rules to produce that affidavit until we attached it to our summary judgment motion because we had no discovery obligation to produce it. With Mr. Moore's obligation, I think as Judge Diaz noted, we did serve discovery requests on Ms. Cooper, and we asked her to identify all individuals with knowledge of the case. We also served a document request on her and asked her to please produce all statements that she obtained from any party that pertained to the case. Mr. Moore's affidavit undoubtedly fits that description. And to answer an earlier question from the Court, it was executed by Mr. Moore on July 27, 2016. That was during the discovery period. It was submitted to us on August 22, 2016. That is after the discovery period. What Ms. Cooper does is offer no justification for holding the affidavit until the close of discovery. And we cited to a district decision in Coalfield for this premise. The district court relied on Rule 37 to strike an affidavit produced after the close of discovery that exceeded the witness's knowledge as represented by the plaintiff. And on that point, Ms. Cooper was given and she identified Brandon Moore. Yes, she did that. When she was asked what he knew about the case, her answer was, I don't know. He doesn't know anything more. I don't know. It's not evidence at all. That's correct. And our position is that the plaintiff has simply not offered an explanation below or here for waiting until the discovery closed to produce Brandon Moore's affidavit. And this Court shouldn't consider it for that reason and also for the reason that you already identified. This is not a joint appeal. This is Ms. Cooper's case. It's not the EOC's case. Ms. Cooper offers no challenge to Judge Fox's decision to strike Ms. Cooper's affidavit and she makes no argument about whether he should or shouldn't have struck or whether he did or didn't consider Mr. Moore's affidavit. And so this Court shouldn't consider it either. Sir, is there a reason why, given that the Fourth Amendment complaint was pending at the time you took Ms. Cooper, counsel took Ms. Cooper's deposition, is there a reason why she wasn't specifically asked about this April 2011 complaint to HR Manager Jamie Hope as it reads in here? I know there's been some other places in which it was Ms. Dove that was, but this fact that there had been at least, or this allegation that there had been this earlier report in April 2011, is there a reason why she wasn't asked about it? Yes, Your Honor. And I say this with all respect to Ms. Cooper and her very capable counsel, but it is not Smithfield's job to make Ms. Cooper's case for her. She was asked in discovery very clearly, identify all complaints you've made in the course of your employment. Yes, she pled something about April 2011 in some of her amended pleadings, but as the Court knows, pleadings are not evidence. When given the opportunity to develop evidence on it, she didn't. And what I would add to that is she supplemented her interrogatory responses three times, never a mention of Lynn Dove, never a mention of April 2011. And I guess, again, only to do what I believe we're obligated to do, which is look at it in the light most favorable to Ms. Cooper, even on Genova Review, did you ever ask whether that was the only time she complained? Especially in light of an allegation in the complaint that it may not have been, and frankly, that deposition read as clear as mud. I couldn't imagine, it must have been a very difficult. It was a long day. Yes. So it would have been, it seems, a much clearer record to have at least asked that catch-all question so that we would have a clearer. And, again, I'm just curious as to whether I've missed something in the record. But doesn't your answer, it's not your obligation to explain for discrepancy or to clarify? Well, Judge Duncan, that is my primary answer. However, to attempt to maybe give a little bit more of an answer, you know, again, we had served this interrogatory on her that I think was very specific. She didn't say anything about April 2011. She didn't say anything about Linda. The deposition proceeded in a very chronological fashion. And, you know, she was asked to chronologize for us from the beginning to the end what happened to you and what did you do about it. And she went through 2007, 2008, 2009, all the way through to the day she walked into Jamie Pope's office on July 18 and made that complaint. She didn't say anything about it. Mr. Larkin, with respect to the pleading, and I forget which one it was, third or fourth, I've lost track, but I suppose one can argue that a pleading might be evidence that it was sworn or verified. Were any of these pleadings sworn or verified? I honestly don't remember. And to answer the last question, I feel that the transcript is fairly clear that there was no April 2011 complaint. And we also gave her an opportunity at the end of the deposition to clarify or add anything else that she hadn't already talked about. And there was no mention. And let me make one other point about Lynn Dove and the fact that this whole narrative about how Ms. Cooper misremembered all of this is just, it's frankly just nonsense. Ms. Cooper actually did mention Lynn Dove in her deposition. She mentioned her after, by the way, failing to identify her in all of these discovery responses, but she did mention her name in deposition. And she mentioned her as the person to whom she gave her resignation letter on July 19th or 20th of 2011. It is implausible that Ms. Cooper would have remembered that, but she somehow forgot that she made a complaint to the same person three months earlier. I found that totally implausible, and I don't think that that argument is persuasive. Ms. Cooper, there's a few more points that were raised that I'd like to address. Ms. Cooper took issue with Judge Fox's finding on supervisory status. As this court well knows, his title is not controlling. His title of superintendent does not decide this question. What does is Vance, and there's no evidence in the record. The evidence in the record is that Mr. Lowry could give her job assignments, could make decisions about her schedule, could evaluate her performance, excuse me, could instruct her on her job responsibilities. Apparently he could deny her request for transfer. He could not. I don't agree with that characterization of the record. There is testimony in the record that at some point, I don't exactly remember when, Ms. Cooper had gone to Human Resources and requested to be moved out of the department. And I think Ms. Cooper herself testified that the reason for her request had nothing to do with harassment. It was that they were overworked in the department at the time. And Ms. Cooper asked to leave the department. And what Mr. Lowry testified is that when he was contacted by Human Resources and asked whether he could stand to lose Ms. Cooper at that time, he said, I can't. I'm overworked right now. I don't have enough supervisors or words to that effect. That is not evidence that he alone had the power to reassign with significantly different responsibilities. And your assertion is that that is the only evidence in the record with respect to his purported denial of a request for transfer? Yes, Your Honor. There's not enough there. Someone else on the other end, presumably some other superintendent in some other department, had to be willing to accept Ms. Cooper. Maybe there wasn't a vacancy. That evidence isn't in the record. But I don't think that saying to Human Resources, I can't stand to lose this person right now, equates with that person has the ability to reassign with significantly different responsibilities. And one other point I'd add there is that there's no evidence in the record that I recall as to where Ms. Cooper asked to go. So there's nothing there for us to even determine whether her landing spot would have had different responsibilities. And so I think it just fails under Vance. But the point that I would make in addition to that is that even if Mr. Lowry is a statutory supervisor, and we think the record is fairly clear that he's not, as we've argued in our briefs, Ms. Cooper failed to prove that Smithfield can't raise the affirmative defense under Farragher and Arolton. A lot of the same evidence that goes to the co-worker question is also dispositive of the Farragher question. You know, there's evidence in the record that Smithfield prohibits harassment in its policies and that Ms. Cooper was well aware of it. Yes, ma'am. Yes, and she received copies of it. She received training on it. She admits she was aware of it. And the record even shows that she had used those policies effectively in the past to report another co-worker who was fired, based on her report. So we clearly, Smithfield clearly exercised reasonable care to prevent harassment. And then the record's clear that we exercised reasonable care to promptly correct it. Affidavits aside, and our arguments are what they are on those, but it's clear that assuming the only complaint made was July 18th, and that's the only complaint in the record, Mr. Pope promptly addressed it. He immediately investigated it. He did interview her witnesses. He immediately removed her from the environment. He gave her paid administrative leave, which he didn't have to do under the law. And he offered to reassign not her but Mr. Lowry to a different shift. And I just want to make sure I understand your procedural argument on Mr. Pope's affidavit. It is that even though it was authored and submitted after the closing of the subcommittee, period, because the plaintiff had never propounded a single interrogatory request for production and your only pre-standing obligation was Rule 26, you had no obligation to create that. You had no obligation to generate and produce that evidence before the close of discovery for the court to consider it. That's correct. If Ms. Cooper had served us with document requests, that affidavit would have been produced. I'd like to address, if I could, the EEOC's arguments and really the main argument, which is the 12B1 ruling. As I said earlier, we don't think you need to decide it because it's not relevant to any of the findings that Judge Fox made on summary judgment. But I would just add on the substance, even if EEOC's interpretation of the regulation is correct, with which we disagree. Well, we would certainly have to. Wouldn't we have to give some deference to the agency's interpretation of its own regulation? No, Your Honor, and I'll explain why. And I have to answer the question in three parts. The first part is their view on the charge-filing regulation is directly at odds with this court's decision in Chaco, a case they barely mentioned. So deferring, in our view, to their interpretation would require overruling of Chaco, and only the en banc court can do that. That's number one. Number two, all that aside, and none of the parties briefed this because the deference question didn't come up, but this is a case of first impression, in my opinion. This is not a typical Auer situation. Auer did not involve an agency regulatory interpretation that conflicted with longstanding circuit law. Okay? It's also not a Brand X situation. That case involved the conflicts between an agency's interpretation of its statute and circuit law. Here what we have is a conflict between agency interpretation of regulation and circuit law. And to our knowledge, and again, we didn't brief this point, the Supreme Court has not ruled on that question. So even though we don't think you need to take the argument up, and I have a third point that I'll make on the substance of it, and even though we think the EEOC's interpretation is wrong, this is a novel question of deference presented here. And we would respectfully suggest that if you feel compelled to address it, additional briefing should be granted to the parties on it. The other thing that I would just say in that respect, and I'm sort of cocktail napkinning this right now, but you asked the question, we question the wisdom of Auer in general. I'm already regretting the question. Well, I would just close by saying I think Skidmore is the better rule in a situation where an agency interprets its own reg. So there's a lot more going on than meets the eye here than just standard Auer. I'd make that point. But to close, I don't think that deference is due at all, and I don't think you even get into any of that. And the reason is because Judge Fox's decision was not based on the EEOC's regulations. It was based on his application of this Court's law. The question here is whether he applied Shako correctly. And, you know, I read the EEOC's brief, and they make a very forceful argument about the scope of the regulations. But when you sort of pare this all back, what they're really saying is that the allegations in the lawsuit are reasonably related to the allegations in the charge. And to make that argument, they're looking at three things, the charge, the pleadings, and this Court's law. And I don't think you need to defer to their read of any of those things. But finally, I know I'm almost done, their position on the merits is simply at odds with Shako. They cite Jones v. Calvert. Yes, sir. So your view of this is that unlike a civil complaint, which is normally subject to the rules of notice pleading, with certain exceptions, this imposes, your view of the law imposes a higher burden on folks who are typically pro se plaintiffs in the EEOC complaint to make sure that they dot every I, cross every T, make every specific allegation or face the risk of waiver? That doesn't seem to be to the right or equity. Well, your Honor, I don't think I'm saying quite that. But I think what I am saying is that this Court very plainly recognized in Shako that the EEOC's theory here, that this is a cause of action by cause of action analysis, is not the way this Court does it. In Shako, there was only one claim presented. And it was a claim for hostile work environment. Only one claim at issue in the jurisdictional issue. And the plaintiff indisputably preserved his claim for hostile work environment under Title VII in his charge. He then advanced the case to trial. And when he got to trial, he introduced allegations that were also indisputably relevant to proving a claim of that he did not include in and which the Shako Court concluded were not reasonably related to the allegations in his charge. And the thing about it is the Court cited to 1601.12 in doing it. And the other thing that they did is they cited to Jones. But, you know, it's clear, though, that the Court's precedent on this is much broader than this claim by claim. And I'll cite Shako. Our cases make clear that the factual allegations made in formal litigation must correspond to those, and I think we can add in, allegations set forth in the administrative charge. And that doesn't, now my time's expired, but I would add that doesn't even go to the fact that we disagree with the EEOC on the fact that since 1983, in this Court's decision in Katz v. Dole, the Court's recognized that quid pro quo and hostile environment, they are different claims. They're different theories of liability with different elements to prove them. If there's nothing else, I thank you very much for the Court's time. Ms. Gray, you have some time for rebuttal. Since my time is short, I will just try to get to as many of these issues that have been raised as possible. But I do want to say that with regard to the Moore Declaration that was submitted in response to the summary judgment motion, the Moore Declaration is not specifically discussed that I can see in Judge Fox's opinion. It's basically raised in the defendant's argument. And on a motion for summary judgment, the facts have to be viewed in the light most favorable to the plaintiff. But when you read Judge Fox's opinion, all of his facts were taken from the light most favorable to the defendant. And there's actually no reason why the Brandon Moore Declaration was not considered based on what I'm reading from Judge Fox's opinion. Well, according to your opposing counsel, it's because you submitted it after the close of discovery. Well, I don't know why that fact is. I don't know where he gets that from because I didn't see it in the order. Do you dispute that it was submitted after the close of discovery? I do. This is what I say. The Declaration of Brandon Moore was submitted in opposition to the defendant's motion for summary judgment. It was attached to our opposition. That's entirely different from answering the question as to whether or not it was submitted after the close of discovery. Do you concede that point? I do concede that. Your point is that Judge Fox makes no mention of that as a basis for excluding it? Yes, because when you look at the facts that were considered by Judge Fox in terms of why he ruled against the plaintiff at summary judgment stage, he doesn't talk about Brandon Moore's Declaration. He talks about the plaintiff's Declaration as being a sham affidavit. And so I'm not sure why the Brandon Moore Declaration was not considered in response to the motion for summary judgment. Now, if Brandon's Declaration was dated after the close of discovery, it's only because there's no obligation that I have to reach out to It's not dated after the close of discovery. Brandon Moore's affidavit is dated before the close of discovery, which is what makes the fact that it wasn't turned over particularly uncomfortable, I would imagine, because it's actually executed in July and discovery closes in August. And hence my confusion, because in the opinion we're talking about the date of the sham affidavit, but there's no mention of Brandon Moore's Declaration in the opinion. So I'm simply saying that Brandon Moore's Declaration, although it was submitted at the close of discovery, after the close of discovery, it was done so because whether I had it or not, in a timely fashion, it was never an issue of whether I had the affidavit in a timely fashion. It was when it was produced in opposition to the motion for summary judgment. Had you turned it over, your opposing counsel could have opposed Mr. Moore and asked him the very questions that we don't have any answers to, which is what did he mean by being present during this April 2011 meeting, which is why the court, now that opposing counsel explained what was going on with the discovery, the fact that the plaintiff had not propounded a single interrogatory request for production, explains better why Judge Fox in his discretion did what he did. Well, and that's not necessarily a fault of the plaintiff. In a case like this, as in many cases, what decisions you make with regard to how you're going to proceed in discovery is sometimes strategical. This case had already gone through the EEOC. We had multiple documents that had already been submitted in the initial disclosures. And so whether we got a document from Brandon Moore at any point in the case, if we had gotten it at some point in the case for the purpose of discovery, then, yes, turn it over. But we didn't get that declaration. It's the same thing on the Pope declaration. They didn't just produce the Pope declaration because we didn't ask for it. They produced it at the time that they did in support of their motion for summary judgment. But you had an obligation. That's the difference. And I guess I'm just not quite clear, and I'm not quite sure it's helping you, to say that your determination to produce it after discovery had closed was strategic. That's not what I'm saying, Judge. I'm not saying that I made a call to just turn it over when I got ready to turn it over. That wasn't what I intended to say. I thought you were saying that decisions are made for strategic reasons. And if I misunderstood that, I apologize, but I wasn't suggesting to the contrary. I would say it as it pertains to discovery in general. But also I will say this. When a witness signs their declaration, that doesn't mean that I get the declaration on that date. Now, going back, looking at the facts in this case, I can't recall if I received Brandon Moore's declaration on the same day he signed it because frequently what happens with witnesses is I will submit, or plaintiff's counsel will submit the declaration to the witness, the witness signs it, and then we have to wait for the witness to get that declaration back to us. And so I'm simply saying I can't say in the context of this case that just because Brandon Moore's declaration is signed on July 18th that I was in a position to be able to give it to defense counsel before it was necessary for a motion for summary judgment. I'm just simply saying that it sounds like we were doing something that was untoward, and I just want to make sure that we're not saying that. I see my time is up. Thank you very much. Thank you.
judges: Allyson K. Duncan, Albert Diaz, Paula Xinis